United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 97-2284

| | | |
|---|---|---|
| Springdale Education Association, | * | |
| Wendell Ridenour, President; | * | |
| Wendell Ridenour; Susan Rowe, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Springdale School District; Jim D. | * | |
| Rollins, Individually and as | * | |
| Superintendent of the Springdale | * | |
| School District, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  December 11, 1997

Filed: January 9, 1998
_____

Before WOLLMAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

The Springdale Education Association and its president, Wendell Ridenour, and Ridenour and Susan Rowe, individually (hereinafter, collectively, "the union"), brought this action pursuant to 42 U.S.C. § 1983 against the Springdale School District and its superintendent, Jim Rollins, in both his individual and official capacities.  The union

appeals from the district court's dismissal of each claim with prejudice, and from the denial of its motion to reconsider the dismissals. We affirm in part, reverse in part, and remand.

## I.

This appeal arises from an apparent conflict between Rollins and those individuals in the district's employ who have associated themselves with the Springdale Education Association, a local union. In its initial complaint, the union charged that certain actions and statements by Rollins (and other unnamed district employees) evincing an anti-union sentiment were violative of the First Amendment. The union sought to assign liability for its alleged constitutional injuries both to the district and Rollins under section 1983. After the defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the district court granted the union leave to amend its complaint.

The union's amended complaint alleged that on May 29, 1996, Rollins directed the Springdale school board attorney to research the legal question whether the district could legally terminate the employment of teachers for involvement in union activities. In addition, Rollins stated at a public meeting that as long as he was superintendent "classified or non-certified district personnel were not going to be members of the Springdale Education Association" and that "he would 'not stand for it.'" Moreover, "Rollins or those under his direction or control" encouraged or coerced employees of the district not to join the union, subjected district employees to "ridicule and contempt in public and private meetings," and placed Rowe, a non-certified district employee, on probation "in direct retaliation for her lawful activities" on behalf of the union. Further, "[s]upervisors under the direction of and with the knowledge of Rollins" had expressed to members of the union the hope that they could "be saved from this 'satanic organization,' referring to the Springdale Education Association, AEA, and/or NEA." See Plaintiffs' Amended Complaint at 2-3.

The defendants filed a motion to dismiss the amended complaint for failure to state a claim.  The district court granted this motion with respect to both the district and Rollins, dismissing each action with prejudice, and denied the union's motion to reconsider.

## II.

We conduct a de novo review of a district court's grant of a motion to dismiss for failure to state a claim.  See Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993).  A complaint should not be so dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief.  See id.  When analyzing a dismissal under Rule 12(b)(6), we accept the factual allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff.  See id.  We do not apply a standard of heightened specificity, more stringent than the usual pleading requirements of the civil rules, in cases alleging municipal liability under section 1983.  See Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)).  At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations.  See Frey, 44 F.3d at 671.

To state a claim under section 1983, a plaintiff must set forth facts that allege an action performed under color of state law that resulted in a constitutional injury.  See Haberthur v. City of Raymore, Mo., 119 F.3d 720, 723 (8th Cir. 1997).  A local government, however, cannot be held liable under section 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior.  See Andrews v. Fowler, 98 F.3d 1069, 1074 (8th Cir. 1996) (citing Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 694 (1978)).  Rather, a plaintiff seeking to impose such liability is required to identify either an official municipal policy or a widespread custom or practice that caused the plaintiff's injury.  See Board of County

Comm'rs of Bryan County, Okl. v. Brown, 117 S. Ct. 1382, 1388 (1997); Kinman v. Omaha Pub. Sch. Dist., 94 F.3d 463, 467 (8th Cir. 1996); McGautha v. Jackson County, Mo., Collections Dep't, 36 F.3d 53, 55-56 (8th Cir. 1994).

The identification of an official policy as a basis upon which to impose liability ensures that a municipality is held liable only for constitutional deprivations "resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Brown, 117 S. Ct. at 1388; see also McGautha, 36 F.3d at 55-56. Similarly, actions performed pursuant to a municipal "custom" not formally approved by an authorized decisionmaker "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Brown, 117 S. Ct at 1388; see also McGautha, 36 F.3d at 56-57.

As the district court noted, neither the union's complaint nor amended complaint, read liberally, alleges that any constitutional injury was the result of an official policy or widespread custom of the school district. Instead, every alleged action is attributed specifically to Rollins, or to unnamed persons "under his direction or control." The district itself is mentioned but once within the alleged facts, by way of a summary accusation that it violated the plaintiffs' rights. See Plaintiffs' Amended Complaint at 4. The amended complaint is thus insufficient, on its face, to state a claim against the district. See, e.g., Baxter by Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 735-36 (7th Cir. 1994) (dismissal of county school corporation proper when complaint failed to adequately allege policies or customs on part of corporation).

Nevertheless, the union attempts in its brief to attribute the actions of Rollins to the district by asserting that Rollins is an authorized district policymaker. Any action taken by Rollins, it contends, must therefore have constituted official district policy. We have summarized the applicable law regarding this theory as follows:

> Although municipal liability for violating constitutional rights may arise from a single act of a policy maker, that act must come from one in an authoritative policy making position and represent the official policy of the municipality. [internal citations omitted]. Therefore, "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality."

McGautha, 36 F.3d at 56 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion)). Whether a person is an authorized policymaker for purposes of assigning municipal liability is a question of state law. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989); Jane Doe "A" v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645 (8th Cir. 1990).

The district court determined that Rollins was not an authorized policymaker for the school district under Arkansas law, precluding any claim against the district for his actions under the "official policy" theory of municipal liability. We agree with this conclusion. With regard to all school district policies, a school superintendent is empowered only to "recommend" changes, which may or may not become "proposals." See Ark. Code Ann. § 6-17-205(c)(2) (Michie 1993). The union argues, however, that Rollins was, in fact, the district's final policymaker with respect to Rowe's being placed on probation in retaliation for union activities. Arkansas law does not establish procedures for placing school district employees on some sort of explicit probation.[1] A superintendent does have authority to place a teacher or a non-certified district

---

[1]Ark. Code Ann. § 6-17-1504, does provide that whenever a superintendent or administrator has reason to believe that a teacher is having difficulties in meeting the district's expectations that might lead to termination or nonrenewal, the administrator "shall bring the problems and difficulties to the attention of the teacher involved in writing and shall document the efforts which have been undertaken to assist the teacher to correct whatever appears to be the cause for potential termination or nonrenewal." Id. at subsection (c).

employee on suspension. See Ark. Code Ann. §§ 6-17-1508(a), -1704. However, those suspended are entitled to a hearing within ten days, and only the school board may terminate employment or continue a suspension for any definite period of time. See Ark. Code Ann. §§ 6-17-1508(e), -1509, -1705. An employee cannot lose compensation without action by the board. See Ark. Code Ann. §§ 6-17-1508(f) & (g), -1705(e).

Arkansas law is clear, then, that a school board, and not a superintendent, has ultimate responsibility for all district policies, including policies involving unfavorable employment action. See Ark. Code Ann. § 6-17-205; § 6-17-1501 et seq. (Teacher Fair Dismissal Act); Western Grove Sch. Dist. v. Terry, 885 S.W.2d 300, 301-03 (Ark. 1994). Nowhere in the union's amended complaint is it alleged that any "probation" suffered by Rowe was ever ratified or approved by the board, tacitly or otherwise. Accordingly, we agree with the district court that municipal liability for such an action cannot be premised upon a vague allegation directed solely at Rollins or the anonymous subordinates to which the union has repeatedly referred.

The union also briefly argues that the amended complaint is sufficient to state a section 1983 claim against the district under the theory that actions and statements by Rollins and others indicate that the district has a widespread custom of unconstitutional anti-union practices. Under such a theory, liability may be established through proof that the alleged conduct was so pervasive among nonpolicymaking employees of the municipality as to constitute a custom or usage with the force of law. See McGautha, 36 F.3d at 56. We have held that in order to state such a claim, a plaintiff must allege facts which, if true, would tend to prove:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Jane Doe "A", 901 F.2d at 646 (citing Harris v. City of Pagedale, 821 F.2d 499, 504-07 (8th Cir. 1987)). We agree with the district court that the amended complaint does not allege facts which, if true, would be sufficient to demonstrate the district's deliberate indifference to or tacit authorization of any sort of pervasive custom of unconstitutional conduct by district employees as measured by such a standard. See McGautha, 36 F.3d at 57; Thelma D. by Delores A. v. Board of Educ. of City of St. Louis, 934 F.2d 929, 933-34 (8th Cir. 1991).

Accordingly, we conclude that the district court did not err in dismissing the action against the district. Moreover, in light of the union's inability to allege facts sufficient to state a claim against the district even after being granted leave to amend, we cannot say that the district court abused its discretion in dismissing the action with prejudice. See In re NationsMart Corp., 1997 WL 721551 (8th Cir. Nov. 21, 1997) at *13 (district court did not abuse discretion in denying leave to amend).

## III.

The union's section 1983 claim against the district and its claim against Rollins must be recognized as analytically distinct. See, e.g., Andrews, 98 F.3d at 1078. In dismissing the claim for individual liability against Rollins, the district court stated:

Pursuant to the relevant statutes cited herein, the Court concludes that Rollins, as superintendent, could not be a final policymaker for the School

District with respect to personnel decisions and unfavorable employment action. It follows that the Court must therefore conclude, as a matter of law, that Rollins is <u>not</u> the final policymaker for the School District and that he is not subject to individual § 1983 liability.

Order of Dismissal at 12.

In fact, a supervisor may be subject to individual liability under section 1983 "if he directly participates in a constitutional violation." <u>Andrews</u>, 98 F.3d at 1078. This is true regardless of whether the supervisor is an authorized policymaker for purposes of municipal liability. <u>See</u> <u>id.</u> In other words, Rollins need not be a final policymaker for the district in order to be subject to individual liability for actions that he himself performed.

Teachers have the right to associate with the union of their choice. <u>See</u> <u>Missouri Nat'l Educ. Ass'n v. New Madrid County R-1 Enlarged Sch. Dist.</u>, 810 F.2d 164, 166-67 (8th Cir. 1987). School officials, in turn, while "free to express their views on unions and to urge teachers to join or not to join a union," may not "terminate or otherwise discriminate against employees who act against their wishes." <u>Id.</u> Accepting as true her allegation that Rollins was responsible for placing her on probation and that he took such action intending to punish her for involvement in union activities,[2] we conclude that Rowe has stated a claim against Rollins that is sufficient to survive a motion to dismiss.[3]

---

[2]This particular allegation by Rowe constitutes the only factual circumstance set forth in the amended complaint that states a potential claim against Rollins upon which relief under section 1983 could be based. In particular, we reject out of hand the union's suggestion that such liability could be premised upon Rollins's having directed the school board attorney to research the question whether the district could terminate its employees because of their support of the union.

[3]In their motion to dismiss, defendants also asserted that Rollins is entitled to qualified immunity in this matter, an argument they renew in their brief on appeal. We have held that a dismissal on this basis will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint. <u>See</u> <u>Hafley v. Lohman</u>, 90 F.3d 264, 266 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1081 (1997). In light of our

The dismissal of all claims against the district is affirmed.  The dismissal of claims by the union and Ridenour against Rollins is affirmed.  The dismissal of Rowe's claim against Rollins in his individual capacity is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

holding in <u>Missouri Nat'l Educ. Ass'n</u>, we cannot say that immunity is established on the face of the complaint.