# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1549

_____

| | | |
|---|---|---|
| Michael Blackett, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Rapid City Area School District, | * | of South Dakota |
| a political subdivision of the State | * | |
| of South Dakota, | * | [UNPUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: November 13, 2000
Filed: January 12, 2001

_____

Before MORRIS SHEPPARD ARNOLD and JOHN R. GIBSON, Circuit Judges, and GOLDBERG,[1] Judge.

_____

PER CURIAM:

Appellant Michael Blackett brought suit under 42 U.S.C. § 1983 against his former employer, appellee Rapid City Area School District ("District"). The district

_____

[1] The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

court[2] dismissed the suit under FRCP 12(b)(6), after finding that Blackett had failed to state a claim for which relief could be granted. We affirm.

Blackett's claim arose out of a sequence of events that occurred while he was working as an accounting instructor at a technical institute operated by the District. Blackett was initially hired to teach the nine months of the 1996-97 academic year, at a salary of $28,000, payable in twelve equal monthly installments. Although his first paycheck was in the correct amount, each of the eleven subsequent monthly paychecks was overpaid by $669.38, for a total overpayment of $7,363.18. Neither the District nor Blackett was aware of the overpayments as they occurred.[3]

The District rehired Blackett for the 1997-98 academic year, under a new contract providing for a salary of $29,280, again to be paid in twelve equal monthly installments. In the course of processing this contract, the District discovered its mistaken overpayments under the prior contract. Throughout the academic year, while Blackett fulfilled his teaching duties, he and the District attempted to negotiate a repayment agreement. As the negotiations continued, both parties brought in legal counsel to advise them. At no time, however, did Blackett dispute the existence or amount of the overpayment, or contest his obligation to repay it.

The negotiations broke down in June, 1998, after Blackett informed the District that he had accepted a different teaching position and would not renew his contract. At that point, the District's business manager halted negotiations and decided to recoup the salary overpayments by withholding the final three paychecks the District otherwise

---

[2]    The Honorable Karen E. Schreier, District Judge, United States District Court for the District of South Dakota.

[3]    We accept all facts alleged in Blackett's complaint as true and construe them in the light most favorable to his claim. See Marvin Lumber and Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 876 (8th Cir. 2000).

would have paid Blackett under the terms of his 1997-98 teaching contract. Blackett then filed this suit, asking for compensatory and punitive damages. He does not seek to recover the amount recouped, which, as the parties have stipulated, was roughly equal to the amount overpaid.

The district court dismissed Blackett's suit because his complaint did not allege that the deprivation of his property interest was the result of a policy or custom of the District.[4] The district court also noted, as an alternative reason for dismissal, that Blackett had failed to show that postdeprivation remedies were inadequate.

We decline to reexamine the grounds cited by the district court, in order to avoid a superfluous inquiry into potential issues of state law.[5] Instead, we see a separate

---

[4] A municipality is subject to liability under § 1983 only for actions taken pursuant to an official custom or policy. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691-94 (1978).

[5] Normally, we would not hesitate to affirm the district court on the basis of the deficient complaint, as Blackett's complaint lacked the barest reference to a custom or policy, and thus failed to satisfy even the liberal pleading requirements for § 1983 municipal liability. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-69 (1992); Jordan by Jordan v. Jackson, 15 F.3d 333, 339-40 (4th Cir. 1994); see also Springdale Educ. Assoc. v. Springdale Sch. Dist., 133 F.3d 649, 652-53 (8th Cir. 1998). Assuming, however, that Blackett refiled his suit after amending the complaint to allege a custom or policy, eventually the court would be required to decide whether the District's business manager was an authorized decisionmaker under South Dakota law. See Board of the County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404-07 (1998) (discussing circumstances in which the single action of an authorized decisionmaker may establish municipal policy).
A similar, although not identical, determination about the authorization for the recoupment would likewise be necessary in considering whether the existence of a postdeprivation remedy would satisfy due process. See Stauch v. City of Columbia, 212 F.3d 425, 432-33 (8th Cir. 2000) (citing Hudson v. Palmer, 468 U.S. 517, 532-33, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

rationale for affirmance: Blackett received all the process he was due under the Constitution and federal law.

Blackett argues that the District violated his federal civil rights by unilaterally ending negotiations and withholding his paychecks. He maintains that South Dakota contract law required the District to obtain a court order permitting such recoupment, and that by failing to do so, the District violated his constitutional right to procedural due process. This reasoning is unusual, but specious.

As an initial matter, we note that Blackett's heavy reliance on the District's alleged violation of state law does not resolve his federal claim. As this circuit has repeatedly held, "[A] violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996); see also Stern v. Tarrant County Hosp. Dist., 778 F.2d 1052, 1059 (5th Cir. 1985) (en banc) ("[I]n our federal system, most property rights are created by state law. . . . The constitutional procedural standards of the due process clause are, however, wholly and exclusively federal in nature: a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation."). Accordingly, we need not, and do not, decide whether the District's resort to self-help violated South Dakota law.

The other essential flaw in Blackett's argument is that it mistakenly equates a due process right to a pre-deprivation hearing with a right to full-blown restitution proceedings in state court. Due process does not necessarily entail formal proceedings, however. See Matthews v. Eldridge, 424 U.S. 319, 348-49 (1976). Rather, "Due process requires adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Marler, 102 F.3d at 1456 (internal quotation marks omitted). "'[D]ue process' is a flexible concept . . . the processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the

deprivation may occur." Walters v. National Assoc. of Radiation Survivors, 473 U.S. 305, 320 (1985). As the Supreme Court has explained:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

Blackett had adequate notice and a meaningful opportunity to be heard. To be sure, Blackett's interest in his salary is an important private interest, but the second and third prongs of the Matthews test weigh heavily in the District's favor. It is undisputed that Blackett had more than ample notice and actively participated in the repayment negotiations, with the assistance of legal counsel. Accordingly, there was no risk of an erroneous deprivation. Further, forcing the District to litigate a foregone conclusion, after it had already spent nine months in fruitless negotiations, and solely for the purpose of satisfying procedural due process, would be unduly burdensome. A contrary finding would only discourage any government employer in a future dispute from seeking a negotiated agreement.

Critical to our determination is the fact that at no time did Blackett dispute the existence or amount of the debt. Blackett relies heavily on the case of Atwater v. Roudebush, 452 F.Supp. 622 (N.D. Ill. 1976). In Atwater, however, the plaintiff claimed that his employer, a government agency, had reduced his retirement benefits as a set-off against another debt "without providing adequate notice or a hearing concerning the existence, validity and amount of the debt." Id. at 626. The Atwater court based its decision on the risk of an erroneous deprivation and on plaintiff's near-

total lack of input into the decisional process.

In similar factual contexts, other courts' decisions have turned on these same critical factors--notice, opportunity for participation, and whether the parties dispute the existence or amount of the overpayment. Compare Green Local Teachers Assoc. v. Blevins, 539 N.E.2d 653, 659 (Ohio Ct. App.1987) (holding that no due process violation occurred because the parties' stipulations indicated "no good faith dispute as to the existence or amount of the overpayments"), with Washington v. Adams, 732 P.2d 149, 155 (Wash. 1987) (en banc) (holding that "due process requires that State employees be given an opportunity to respond where there is a good-faith dispute concerning the amount of any past overpayments").

This would be a different case if the District had summarily withheld Blackett's paychecks as soon as it became aware of the overpayment, without giving Blackett notice or opportunity to contest the action. But these are not the facts before us. Blackett received adequate notice, enjoyed a meaningful opportunity to be heard, and never questioned the amount owed. Regardless of whether the District violated state law, it did not violate Blackett's right to due process. Accordingly, the judgment of the district court is affirmed. See 8th Cir. R. 47B.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

-6-